UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STEVEN WEST,

       Plaintiff,                                Hon. Richard Alan Enslen

v.                                                    Case No. 4:03-CV-47

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       The Commissioner determined that Plaintiff is not disabled as defined by the Act.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 40 years of age at the time of the ALJ's decision. (Tr. 13). He successfully completed high school, as well as one year of college, and worked previously as a military police officer, millwright assistant, powder coat technician, and custodian. (Tr. 13, 62, 67).

Plaintiff applied for benefits on March 16, 2001, alleging that he had been disabled since January 19, 2000, due to back pain. (Tr. 49-51, 61). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-48). On July 24, 2002, Plaintiff appeared before ALJ Sharon Bauer, with testimony being offered by Plaintiff, Plaintiff's daughter and mother, and vocational expert, Michael Simons. (Tr. 394-458). In a written decision dated October 29, 2002, the ALJ determined that Plaintiff was not disabled. (Tr. 13-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On January 19, 2000, Plaintiff (who was wearing his seat belt at the time) was involved in an automobile accident in which his vehicle was struck from behind. (Tr. 94). Immediately following the accident, Plaintiff was transported to the hospital where he reported experiencing neck pain. *Id.* The results of a physical examination revealed "tenderness" at C1 and C2, but were otherwise unremarkable with no evidence of neurological impairment. (Tr. 94-95). X-rays of Plaintiff's cervical spine revealed "minor" degenerative changes with no evidence of soft tissue abnormality, acute fracture, or dislocation. (Tr. 100). The results of a CT scan of Plaintiff's cervical spine revealed no evidence of fracture or herniation. (Tr. 101). Plaintiff also participated in a CT scan of his brain, the results of which were "unremarkable." (Tr. 159). Plaintiff was diagnosed with a cervical strain and released. (Tr. 95).

On March 18, 2000, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed a "small" disc protrusion at L4-L5 "without significant spinal stenosis or root compression." (Tr. 157).

On June 29, 2000, Plaintiff was examined by Dr. Ronald Mason. (Tr. 105). Plaintiff reported that he was experiencing "some neck discomfort." Plaintiff denied experiencing any "peripheral or sensory motor losses." An examination revealed "some" tenderness at C4-C5 but was otherwise unremarkable. X-rays of Plaintiff's cervical spine were "normal." *Id.* Later that same day Plaintiff was involved in another automobile accident in which his vehicle was struck from behind. (Tr. 107).

On August 27, 2000, Plaintiff was discovered lying on the side of the road. (Tr. 256). Plaintiff had been distraught over being charged with sexually molesting his daughters and attempted

to commit suicide by consuming beer and pain medication. Plaintiff was transported to the Allegan General Hospital. *Id.* Once Plaintiff's medical condition was stabilized he was transferred to the psychiatric unit for treatment. (Tr. 258). Plaintiff responded well and was discharged from the hospital five days later. (Tr. 256-57). He was diagnosed with adjustment disorder with depressed mood. (Tr. 257). Plaintiff later participated in extended therapy to treat his "sexual addiction." (Tr. 415-16).

On September 13, 2000, Plaintiff participated in an MRI of his lumbar spine, the results of which revealed a "small" disc herniation at L4-L5 "without compromise of the neural structures." (Tr. 156).

On November 27, 2000, Plaintiff was examined by Dr. Mark Meyer. (Tr. 110-12). Plaintiff reported that physical therapy and chiropractor care "helped" him to "some degree," but did not provide him with "complete relief." (Tr. 110). Plaintiff denied experiencing any numbness or tingling in his extremities. *Id.* Plaintiff exhibited "grossly intact" cranial nerves. (Tr. 111). He walked normally and exhibited 5/5 strength in "all" upper and lower extremity muscle groups. The examination revealed no evidence of sensory or reflex impairment. *Id.* X-rays of Plaintiff's cervical spine revealed "mild" degenerative changes (unchanged from January 19, 2000) with no evidence of fracture, subluxation, or abnormal cervical motion. (Tr. 113). Plaintiff also participated in a total body bone scan, the results of which revealed "upper dorsal levoscoliosis of minimal degree" with "normal radionuclide distribution in the skeletal structures." (Tr. 114).

On April 9, 2001, Plaintiff completed a questionnaire regarding his activities. (Tr. 74-79). Plaintiff reported that he can walk 100-300 yards, stand for 15 minutes, but cannot sit on "hard surfaces" for prolonged periods of time. (Tr. 75-76). Plaintiff reported that while he was

5

unable to lift "much of anything," he could carry 30-40 pounds. (Tr. 76). Plaintiff also reported that he shops, cooks, washes dishes, and performs lawn work. (Tr. 78).

On August 28, 2001, Plaintiff was examined by Dr. Patrick Reddan. (Tr. 218-21). Plaintiff reported that he was experiencing neck pain, back pain, and headaches. (Tr. 218). Plaintiff exhibited "multiple trigger points" at the base of his neck and cervical region, tenderness over the right greater occipital nerve, and "some" tenderness at C4-C5 and C5-C6. (Tr. 220). Plaintiff walked with a normal gait and exhibited 5/5 strength throughout his extremities. Dr. Reddan diagnosed Plaintiff with right occipital neuralgia and myofascial pain of the neck and upper back, as well as "probable" right cervical facet pain, for which he recommended that Plaintiff undergo a series of nerve block injections. *Id.*

On September 21, 2001, and again on November 2, 2001, Plaintiff received a series of cervical facet joint injections and occipital nerve block injections. (Tr. 222-23, 226-28). When examined on December 14, 2001, Plaintiff reported that he "did quite well" following this treatment, but that his pain "was starting to come back." (Tr. 229). On January 4, 2002, Plaintiff received another series of injections. (Tr. 215-17). The physician administering the injections observed that there was no evidence that Plaintiff was experiencing radicular symptoms. *Id.*

X-rays of Plaintiff's cervical spine, taken on January 10, 2002, revealed "minimal" spondylosis at C6-C7 and narrowing of the C3 and C6 disc spaces. (Tr. 231). X-rays of Plaintiff's cervical spine and pelvis, taken the same day, revealed spondylosis at L4-L5 with narrowing of the L4 and L5 disc spaces. (Tr. 233). The remainder of Plaintiff's lumbar spine and pelvis were "normal." *Id.*

On February 13, 2002, Plaintiff reported that his pain had improved, but that playing basketball caused his lower back to hurt. (Tr. 247). On April 26, 2002, Plaintiff reported that he was "doing pretty good." (Tr. 245).

On July 7, 2002, Plaintiff completed a questionnaire regarding his activities. (Tr. 87-92). Plaintiff reported that he goes fishing and hiking, attends picnics and sporting events, and collects sports cards. (Tr. 87). Plaintiff also reported that he drives, cooks, cleans house, reads, and performs yard work. (Tr. 89-90).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) L4-L5 degenerative disc (without compression); (2) myofascial/musculoskeletal pain (chronic pain syndrome); and (3) adjustment disorder. (Tr. 15). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 15-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the

burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) he cannot lift, carry, push, or pull more than ten pounds occasionally; (2) he can only occasionally climb, balance, stoop, kneel, crouch, or crawl; (3) he can perform only simple, unskilled, routine tasks; and (4) he can walk for 6 hours during an 8-hour workday, but requires a sit/stand option. (Tr. 19). With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, mild difficulty maintaining social functioning, mild deficiencies in concentration, persistence or pace, and has experienced one or two episodes of decompensation. *Id.* After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition

or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Michael Simons.

The vocational expert testified that there existed at least 100,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 447-51). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff asserts that his testimony regarding his level of pain and limitation establishes his entitlement to disability payments. The ALJ discounted Plaintiff's subjective allegations of pain and disability, however, concluding that such were "not entirely credible in light of the claimant's own description of his activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at hearing, the reports of the treating and examining practitioners, the medical history, and the findings made on examination." (Tr. 18).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th

Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d

at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The objective medical evidence simply fails to support Plaintiff's subjective allegations. Specifically, as the ALJ correctly observed

> There has been no frequent or intensive treatment or change in the treatment regimen. There has been no physical therapy since May 2000. The claimant sees only a family doctor and a chiropractor, not a specialist. There has been no frequent change in prescribed medications, dosage, or type, and no significant side effects noted or alleged in the file. In March 2001, the claimant stopped all medication except occasional Neurontin or Vicodin. There is a lack of objective signs, reliable indicators, and clinical findings.

(Tr. 17).

As the ALJ further observed, Plaintiff's reported activities do not support his allegations of total and complete disability. In a July 7, 2002 questionnaire Plaintiff reported that he goes fishing and hiking, attends picnics and sporting events, collects sports cards, drives, cooks, cleans house, reads, and performs yard work. (Tr. 87-92). While the testimony presented at the July 24, 2002 administrative hearing suggested that Plaintiff experienced debilitating pain and limitation, to the extent that such testimony conflicted with Plaintiff's responses to a questionnaire completed less than three weeks previously the ALJ is charged with resolving such conflicts. In this respect,

the ALJ correctly concluded that the testimony presented at the administrative hearing was contradicted by other testimony and documentary evidence, as well as the objective medical evidence of record. (Tr. 17-18).

Furthermore, as Defendant correctly asserts, none of Plaintiff's care providers have imposed on him limitations which are inconsistent with those articulated by the ALJ in his RFC determination. It is not disputed that Plaintiff suffers from severe impairments. However, the evidence of record simply fails to support Plaintiff's allegations of disabling pain and limitation. In sum, there exists substantial evidence to support the ALJ's credibility determination.

b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy her burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed at least 100,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions she posed to the vocational expert, the ALJ properly relied upon his response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: November 29, 2006                     /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge